UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 14-166-HRW

CARL AND DENICE WELLMAN,                                      PLAINTIFFS,

v.                **MEMORANDUM OPINION AND ORDER**

SAFECO INSURANCE COMPANY OF AMERICA.,             DEFENDANT.

This matter is before the Court upon Defendant Safeco Insurance Company of America's Motion for Partial Summary Judgment [Docket No. 18]. The motions has been fully briefed by the parties [Docket Nos. 18-1, 19 and 20]. For the reasons set forth below, the Court finds that Plaintiffs' breach of contract claim fails as a matter of law.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from a July 30, 2012 fire that occurred at Plaintiffs Carl and Denice Wellman's residence at 2030 West Hearthstone Lane in Ashland, Kentucky. As a result of the fire, the Plaintiffs' home was a total loss. At the time of the fire, Safeco Insurance Company of America ("Safeco") insured Plaintiffs' residence and personal property subject to the terms, conditions, and exclusions of Policy Number OK5622106 ("the Policy"), which provides, in pertinent part:

> 5. Loss Settlement. Covered property losses are settled as follows:
>     a. Replacement Cost. Property under Coverage A or B at replacement cost, not including those items listed in 5.b.(2) and (3) below subject to the following:
>         (1)    We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

      (a)     the limit of liability under the policy applying to Coverage A or B;
      (b)     the replacement cost of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;
      ( c)     the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss;
      (d)     the direct financial loss you incur; or
      (e)     our pro rata share of any loss when divided

with any other valid and collectible insurance applying to the covered property at the time of loss.

(2)     When more than one layer of siding or roofing exists for Building Property We Cover, we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.
When more than one layer of finished flooring exists we will pay for the finish of only one layer

(3)     If the cost to repair or replace is $1,000 or more, we will pay the difference between actual cash value and replacement cost only when the damaged or destroyed property is repaired or replaced.

(4)     You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis but not exceeding the smallest of the following amounts:
      (a)     the applicable limit of liability;
      (b)     the direct financial loss you incur; or
      ( c)     our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

You may still make claim on a replacement cost basis by notifying us of your intent to do so within

180 days after the date of loss.

[Docket No. 18-3 at p. 12].

Consistent with the policy, Safeco offered Plaintiffs three options after the fire: purchase another home, rebuild their old home, or take a lump-sum settlement from Safeco reflecting the actual cash value of their home. [Deposition of Carl Wellman, Docket No. 18-7, pp. 99-100]. Plaintiffs elected to rebuild their home at the same location. *Id.* In accordance with their decision to rebuild, Safeco's adjuster, Mandy Savage, provided them with an estimate reflecting the Actual Cash Value of the home and the Replacement Cost Value of the home. Neither estimate was disputed by Plaintiffs. *Id.* at p. 111.

Pursuant to the Loss Settlement provisions of the Safeco Policy, Safeco issued the Wellmans a check for $199,550.67 on August 31, 2012 and another on September 26, 2012 for $4,761.96, which represented the Actual Cash Value of the home. [Docket No. 18-4].

In November 2012, construction began on the Plaintiffs' new residence. At that time, Citizens National Bank informed the Plaintiffs that it was accelerating the approximately $190,000 outstanding on the mortgage loan on the Plaintiffs prior home that had been destroyed by the fire. Plaintiffs did not apply for an additional mortgage. [Docket No. 18-7, pp. 133-134]. Instead, in order to finance the construction, Plaintiffs chose to sell their vehicles, borrow money from family members, and put the money from their personal property settlement that had been paid to them by Safeco toward rebuilding their home. *Id.* at pp. 135, 143.

Ultimately, Plaintiffs were unable to pay their contractor McKnight Construction. In March 2103, McKnight abandoned the project. *Id.* at p. 148. In April 2-013, Plaintiffs hired Carver Construction to continue the rebuild. Subsequently, however, Plaintiffs finished the

rebuilding of the home themselves; they moved back in to their new home on May 31, 2013. *Id.* at pp. 150-51; 165.

Based upon Mr. Wellman's deposition testimony, Plaintiffs "upgraded" during construction, installing more expensive countertops, heating units, lighting and flooring. *Id.* at pp. 184-185. The estimated value of their new home was $336,400.00, compared to $237,500.00 of their old home. *Id.*

The dispute which forms the basis of this lawsuit arose when Plaintiffs demanded that Safeco advance the replacement cost payments they needed to finish the rebuild before the repair or replacement work was complete. Mr. Wellman explained his claim during this colloquy with Defendant's counsel:

> Q. ... And it's my understanding – correct me if I'm wrong – your claim is that [Safeco] didn't advance the extra money to get the contractors paid so they would continue working; is that correct?
>
> A. Yes.
>
> Q. And they didn't do that because ... the damaged property hadn't been repaired or replaced yet. They weren't going to advance the money, correct?
>
> A. Correct. There was no way to keep the workers there working if we did not have the money to pay them to stay and work and buy the materials and supplies and they needed to do it.

*Id.* at pp. 39-40.

However, in accordance with the terms of the Policy, Safeco could only provide additional funds to the Plaintiffs once the Plaintiffs submitted receipts showing that the repairs were complete. Mr. Wellman testified:

> A. ... we had requested money from Safeco, but we were told no.
> Q. Who told you no?
> A. Mandy Savage.

> \* \* \*
> Q. Did you send her any proof that you had repaired or replaced anything at the house?
> A. That is when we started putting all of our stuff into the spreadsheets, so that we could send that to her.
> Q. Did she say you had to do that before you could be paid?
> A. She said we had to do that before she could request an advance.

*Id.* at pp. 32-33.

Upon receipt of such documentation, Safeco reimbursed the Plaintiffs for the repairs in accordance with the Safeco Policy. *Id.* at p. 33. In total, Safeco reimbursed the Plaintiffs $315,915.54 to rebuild their residence, which represented the full amount of the agreed cost of repair.

Plaintiffs filed this lawsuit Safeco and its adjusters Many Savage and Elizabeth Tobler in Boyd Circuit Court alleging breach of contract and violations Kentucky's Unfair Claims Settlement Practices Act, KRS § 304.12-230. Circuit Judge David Hagerman dismissed Savage and Tobler and Defendant removed the case to this Court.

Safeco seeks summary judgment as to the breach of contract claim.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). " 'The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party].' " *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir.2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### III. ANALYSIS

The interpretation of an insurance contract is a matter of law for the Court to determine. *M organfield National Bank v. Damien Elder & Sons,* 836 S.W.2d 893 (Ky. 1992). Under Kentucky law, "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." *State Farm Mut. Ins. Co. v. Fireman's Fund American Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977). Accordingly, the terms used within an insurance contract "should be given their ordinary meaning as persons with an ordinary and usual understanding would read and construe them." *Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (Ky. App. 1997) (quoting *City of Louisville v. McDonald*, 819 S.W.2d 319 (Ky. App. 1991)).

In their Complaint, Plaintiffs allege that Safeco breached the contract of insurance in three instances: first, "[W]hen advances were needed by contractors [Safeco]4 refused to advance funds that were provided for in the approved bid by [Safeco's] selected contractor Jeff Wolf of JWI Restoration" [Complaint, Docket No. 1-1, ¶ 12]; second, "[Safeco] forced the Plaintiffs to use their personal savings to fund the rebuilding of the home" *Id.* at ¶ 13; and, finally, "[Safeco] forced the Plaintiffs to borrow money from friends and relatives in order to provide for themselves and their child." *Id.* at ¶ 16.

Defendants argue that the unambiguous terms of the Policy require repair or replacement of the property as a condition precedent to the payment of replacement cost funds, and it did not breach the Policy as a matter of law.

The Policy explicitly provides: "[i]f the cost to repair or replace is $1,000 or more, we will pay the difference between actual cash value and replacement cost **only when** the damaged or destroyed property is repaired or replaced." [Docket No. 18-3, p. 21] (emphasis added). The Policy forbids "advancing" replacement cost value payments before the property was actually repaired or replaced. This condition has been upheld by Kentucky courts. *See Snellen v. State Farm Fire and Cas. Ins. Co.*, 675 F.Supp. 1064 (W.D. Ky. 1987); *See also, Hampton v. Safeco Ins .Co. of America*, 614 Fed.Appx. 321, 324 (6th Cir. 2015).

In *Snellen v. State Farm Fire and Cas. Ins. Co.*, 675 F.Supp. 1064 (W.D. Ky. 1987), Judge Simpson considered the exact issue before this Court, to-wit, whether an insured was entitled to replacement cost value before the property at issue had been repaired or replaced. Applying Kentucky law, the Court, interpreting a similar policy provision, held "the plaintiff is not entitled to claim replacement cost under the circumstances presented here, where she has not repaired or replaced nor even evidenced an intention to do so." *Id.* at 1067. Judge Simpson concluded: "[t]he policy in question is not ambiguous with respect to the insurer's obligation to pay replacement cost. Actual replacement, and the incurrence of costs in that endeavor, is clearly a condition precedent to such a claim." *Id.* at 1067.

In this case, the Policy required Safeco to "pay the difference between actual cash value and replacement cost only when the damaged or destroyed property is repaired or replaced," and this is exactly what Safeco did, paying Plaintiffs a total of $315,915.54 as they rebuilt their home.

In an effort to resurrect their claim, Plaintiffs attempts to raise a dispute as to the adequacy of Safeco's Actual Cash Value payment. Yet, they fail to establish, or specifically allege how the payment was deficient. To the contrary, during their depositions, Plaintiffs admitted that the Actual Cash Value figure was not in dispute, and even went so far as to state that they were not qualified to offer opinions as to the Actual Cash Value of their home. Neither law or equity would permit Plaintiff to accept the actual cash value payment as correct and then later have second thoughts and sue. *See State Auto. Prop. & Cas. Co. v. There is Hope Cmty. Church ex rel. Blacklock*, No. 4:11CV-149-JHM, 2014WL 2003302, at *3 (W.D. Ky. May 15, 2014) (where insured agrees with actual cash value figure and receives payment, insured cannot later sue for breach of contract). Plaintiffs have not, and cannot, point to an issue of material fact in this regard.

Nor do Plaintiffs' Responses to Safeco's Interrogatories create a genuine issue of material fact. As evidenced by their Interrogatory Responses, Plaintiffs' breach of cotract claim against Safeco is premised upon the belief that they were entitled to advances on the replacement cost funds they needed to finish the rebuilding of their home because Plaintiffs' mortgage lender accelerated the $190,000 outstanding on the mortgage loan on the Plaintiffs' home. Mrs. Wellman confirmed this at her deposition:

> Q. ... And it's my understanding – correct me if I'm wrong – your claim is that [Safeco] didn't advance the extra money to get the contractors paid so they would continue working? is that correct?
> A. Yes.
> Q. And they didn't do that because ... the damaged property hadn't been repaired or replaced yet. They weren't going to advance the money, correct?
> A. Correct. There was no way to keep the workers there working if we did not have the money to pay them to stay and work and buy the materials and supplies and they needed to do it.

[Deposition of Denise Wellman, Docket No. 20-2, pp. 39-40]. Yet Safeco had no involvement with the bank's decision to accelerate the mortgage loan. Nor did Safeco, or its adjustors, advise Plaintiffs to forego a new mortgage. According to the Policy, Safeco could only provide additional funds to the Plaintiffs once the Plaintiffs had completed repairs on their home, which is exactly what Safeco did in this case.

As for Plaintiffs' argument that they are owed an additional $50,320.00, they have not completed the repairs for which they claim they are entitled to an additional $50,320.00, and therefore, under the terms of the Policy, Plaintiffs are not entitled to this amount.

## IV. CONCLUSION

Plaintiffs' Response to Safeco's dispositive motion disregards the clear and unambiguous language of the Policy and fails to identify any genuine issue of material fact. According to the plain language of the Policy, Safeco owed Plaintiffs the difference between the Actual Cash Value and the Replacement Cost Value of their property "only when the damaged or destroyed property is repaired or replaced." Under the Policy, Safeco was not required to pay Plaintiffs "advances" as Plaintiffs have claimed in their Complaint, in their discovery responses, and in their deposition testimony; nor was Safeco required to pay the Plaintiffs' "estimated" replacement cost figures. Pursuant to the Policy and established Kentucky law, Safeco was only required to reimburse Plaintiffs for the property that was repaired or replaced. Safeco did, in fact, pay Plaintiffs $315,915.54 for the property that was repaired or replaced. As such, Safeco did not breach its contract and Plaintiff's claim for the same fails as matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Safeco Insurance Company of America's Motion for Partial Summary Judgment [Docket No. 18] be **SUSTAINED.**

This 11th day of May, 2016.



Signed By:
Henry R. Wilholt, Jr.
United States District Judge