UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 14-166-HRW

CARL AND DENICE WELLMAN,                                           PLAINTIFFS,

v.            **MEMORANDUM OPINION AND ORDER**

SAFECO INSURANCE COMPANY OF AMERICA.,                              DEFENDANT.

This matter is before the Court upon Defendant Safeco Insurance Company of America's Motion for Summary Judgment [Docket No. 34]. The motion has been fully briefed by the parties. For the reasons stated herein, the Court finds that Defendant is entitled to judgment as a matter of law as to Plaintiffs Carl and Denice Wellman's remaining claims for bad faith and violation of Kentucky's Unfair Claims Settlement Practices Act.

I.   BACKGROUND

This case arises out of a July 30, 2012 fire that occurred at the residence of Plaintiffs Carl and Denice Wellman, located at 2030 West Hearthstone Lane in Ashland, Kentucky. The Plaintiffs' home was a total loss.

At the time of the fire, Safeco insured Plaintiffs' residence and personal property subject to the terms, conditions, and exclusions of policy number OK5622106.

As this Court has already ruled, the Policy required Safeco to "pay the difference between actual cash value and replacement cost only when the damaged or destroyed property is repaired

or replaced." This is what Safeco did, paying Plaintiffs a total of $315,915,54 as they rebuilt their home.

Consistent with the terms of the Policy, Safeco offered Plaintiffs three options after the fire: purchase another home, rebuild their old home, or take a lump-sum settlement from Safeco reflecting the actual cash value of their home.

Despite the fact that Plaintiffs had listed their home for sale immediately prior to the fire, Plaintiffs elected to rebuild their home at the same location. In accordance with their decision to rebuild, Safeco's adjuster, Mandy Savage, provided the Plaintiffs with an estimate reflecting the Actual Cash Value of the home and Replacement Cost Value of the home.

Plaintiffs did not dispute either estimate.

Safeco then issued the Plaintiffs checks for $199,550.67 and $4,761.96, which represented the Actual Cash Value of the home. Thereafter, Plaintiffs were paid, pursuant to the terms of the policy, as they showed that repairs were complete. Construction began on the Plaintiffs' new residence.

Subsequently, Citizens National Bank informed the Plaintiffs that it was accelerating the approximately $190,000 outstanding on Plaintiffs' mortgage loan on their prior home that had burned. Safeco had no involvement in the bank's decision to accelerate the Plaintiffs' loan or the bank's decision to take Plaintiffs' funds. Despite the fact that the bank had taken most of Safeco's Actual Cash Value payment to the Plaintiffs, Plaintiffs decided not to apply for another mortgage to completely rebuild their home in 2012. Instead, in order to finance the construction, Plaintiffs allege that they chose to sell their vehicles, borrowed money from family members, and put the money from their personal property settlement that had been paid to them by Safeco

toward rebuilding their home.

Ultimately, Plaintiffs allege that they were unable to pay some of the contractors they hired to rebuild portions of their home. During construction, Plaintiffs also decided to make various "upgrades" to their rebuilt home, including installing more expensive countertops, heating units, upgraded lighting, and more expensive flooring, which was not provided for under the Policy and increased their costs.

In the end, Plaintiffs finished the rebuilding of their home themselves. The estimated value of Plaintiffs' new home was $336,400.00, compared to $237,500.00 of their old home.

Plaintiffs filed suit against Safeco in Boyd Circuit Court alleging breach of the Policy, bad faith, and violation of Kentucky's Unfair Claims Settlement Practices Act, KRS § 304.12-230, *et seq.* ("UCSPA"). The case was removed to this Court.

Plaintiffs' breach of contract claims arose from Plaintiffs allegations that Safeco should provide "advances" on the replacement cost payments they needed to finish the rebuild of their home before the repair or replacement work was complete. However, the express terms of the Policy stated that Safeco could only provide additional funds to the Plaintiffs once the Plaintiffs submitted receipts showing that the repairs were complete.

Safeco moved for partial summary judgment on Plaintiffs' breach of contract claim. Safeco argued that Plaintiffs' demand for advanced replacement cost payments was contrary to the terms of the Policy, which clearly states that Safeco could only provide additional funds to the Plaintiffs once the destroyed property was repaired or replaced.

This Court sustained Safeco's Motion for Partial Summary Judgment, finding that Safeco had not breached the Policy. The Court further found that Safeco reimbursed the Plaintiffs for the

3

repairs upon receipt of documentation from Plaintiffs showing the completed repairs in accordance with the terms of the Policy.

In seeking dismissal of what remains of this case, Safeco argues that because this Court has already determined that Safeco paid Plaintiffs in accordance with the terms of their insurance policy, Plaintiffs cannot establish that Safeco improperly denied any claim by Plaintiffs. According to Safeco, nor can Plaintiffs possibly show that Safeco acted with the malice, evil motive, or reckless disregard necessary to establish a bad faith claim under Kentucky law. Safeco points out that it has already been determined that Safeco acted within the terms of its policy.

Plaintiffs urge this Court to overrule Safeco's Motion for Summary Judgment on the basis that many genuine issues of material fact exist with respect to Plaintiffs' claims. Specifically, they argue that Safeco continues to mischaracterize Plaintiffs' case as one that is only about the failure of Safeco to pay on their homeowner's policy. However, as both Mr. and Mrs. Wellman testified in their depositions and as their discovery responses made clear, Plaintiffs' claims against Safeco arise under provisions of the UCSPA that do not require a denial of payment. In this respect, Plaintiffs contend that summary judgment should not be granted because a jury could find, and should be permitted to find, that Safeco violated the UCSPA and acted in bad faith with respect to adjusting the claim. According to Plaintiffs, this is an independent violation of the UCSPA that does not require, as Safeco argues, a denial payment of the policy proceeds.

## II. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. A non-moving party cannot withstand summary judgment, however, by introduction of a "mere scintilla" of evidence in its favor. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The tort of bad faith for breach of an insurer's obligation in the area of first-party insurance was first recognized by a court of last resort in 1973 in *Gruenberg v. Aetna Insurance Co.* 510 P.2d 1032 (Cal. 1973). In doing so, the Supreme Court of California created an entirely new cause of action against insurers regarding first-party coverages. Prior to this time, the courts followed the common-law rule that damages for breach of contract were, with rare exception, limited to those in the contemplation of the parties at the time the bargain was struck. As a general rule, consequential damages were more exclusively within the realm of tort law than that of contract, and it was no tort for a party to breach a contract, even when the breach was intentional. Now, more than forty years later, the law regarding the obligation of an insurer in first-party situations is still evolving and expanding. In almost all jurisdictions, insurers not only are exposed to consequential damages for economic loss and emotional distress for failing to deal with their insureds fairly and in good faith, but they also may be subject to substantial awards of punitive damages. Moreover, most states have enacted statutory bad faith, appurtenant to the tort.

The foundation of the modern common-law bad faith action was laid by the Kentucky Supreme Court in *Wittmer v. Jones*. 864 S.W.2d 885 (Ky. 1993). It was there that the court set forth the three elements required to sustain a cause of action for bad faith against an insurer:

(1) the insurer must be obligated to pay the insured's claim under the terms of the policy;

(2) the insurer must lack a reasonable basis in law or fact for denying the claim;

and

(3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a base existed.

*Id.* at 890.

In other words, the plaintiff/insured must show not only that the insurer had an obligation to pay under the terms of the policy, but also that the insurer had no reasonable basis in law to deny the claim and either knew or should have known that there was no such basis.

As Kentucky Supreme Court Justice William Cooper observed, "*Wittmer* gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon common law theory or a statutory violation". *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000).

The failure to show any one of the *Wittmer* elements eliminates Plaintiffs' bad faith claims as a matter of law.

### III.    ANALYSIS

Safeco contends that is entitled to summary judgment on Plaintiffs' bad faith claims in this case because (1) this Court has already determined that Safeco paid Plaintiffs in accordance with the terms of the Policy; (2) Safeco therefore did not lack a reasonable basis for "denying" Plaintiffs' claim; (3) Safeco did not act with malice or reckless disregard for the Plaintiffs' rights; and (4) Plaintiffs have produced no evidence of their alleged damages related to Safeco's claims handling.

At the core of every bad faith case, of course, is the policy. Indeed, the first *Wittimer* element requires a showing that the policy, by its very terms, required the insurer to pay.

In this case, the policy provides, in pertinent part:

> 5. Loss Settlement. Covered property losses are settled as follows:
>> a. Replacement Cost. Property under Coverage A or B at replacement cost, not including those items listed in 5.b.(2) and (3) below subject to the following:
>> (1) We will pay the full cost of repair or replacement,
>>> but not exceeding the smallest of the following amounts:
>>> (a)    the limit of liability under the policy applying to Coverage A or B;
>>> (b)    the replacement cost of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;
>>> (c)    the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss;

    (d) the direct financial loss you incur; or

    (e) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

 (2) When more than one layer of siding or roofing exists for Building Property We Cover, we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment. When more than one layer of finished flooring exists we will pay for the finish of only one layer.

 (3) If the cost to repair or replace is $1,000 or more, we will pay the difference between actual cash value and replacement cost only when the damaged or destroyed property is repaired or replaced.

 (4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis but not exceeding the smallest of the following amounts:

    (a) the applicable limit of liability;

    (b) the direct financial loss you incur; or

    ( c) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

You may still make claim on a replacement cost basis by notifying us of your intent to do so within 180 days after the date of loss.

[Docket No. 18-3 at p. 12].

As set forth at the beginning of this opinion, pursuant to the language of the policy, Safeco offered Plaintiffs three options after the fire: purchase another home, rebuild their old home, or take a lump-sum settlement from Safeco reflecting the actual cash value of their home.

8

[Deposition of Carl Wellman, Docket No. 18-7, pp. 99-100].

Plaintiffs elected to rebuild their home at the same location. *Id.*

In accordance with their decision to rebuild, Safeco's adjuster, Mandy Savage, provided them with an estimate reflecting the Actual Cash Value of the home and the Replacement Cost Value of the home. Neither estimate was disputed by Plaintiffs. *Id.* at p. 111.

Disputes arose, however, when Plaintiffs demanded that Safeco advance the replacement cost payments they needed to finish the rebuild before the repair or replacement work was complete. In his deposition, Mr. Wellman explained his claim during this colloquy with Defendant's counsel:

> Q. ... And it's my understanding – correct me if I'm wrong – your claim is that [Safeco] didn't advance the extra money to get the contractors paid so they would continue working; is that correct?
>
> A. Yes.
>
> Q. And they didn't do that because ... the damaged property hadn't been repaired or replaced yet. They weren't going to advance the money, correct?
>
> A. Correct. There was no way to keep the workers there working if we did not have the money to pay them to stay and work and buy the materials and supplies and they needed to do it.

*Id.* at pp. 39-40.

However, in accordance with the terms of the Policy, Safeco could only provide additional funds to the Plaintiffs once the Plaintiffs submitted receipts showing that the repairs were complete. Mr. Wellman testified:

> A. ... we had requested money from Safeco, but we were told no.
> Q. Who told you no?
> A. Mandy Savage.
> * * *
> Q. Did you send her any proof that you had repaired or replaced anything at the house?
> A. That is when we started putting all of our stuff into the spreadsheets, so that we could
> send that to her.
> Q. Did she say you had to do that before you could be paid?
> A. She said we had to do that before she could request an advance.

*Id.* at pp. 32-33.

Upon receipt of such documentation, Safeco reimbursed the Plaintiffs for the repairs in accordance with the Safeco Policy. *Id.* at p. 33. In total, Safeco reimbursed the Plaintiffs $315,915.54 to rebuild their residence, which represented the full amount of the agreed cost of repair.

In their Complaint, Plaintiffs allege that Safeco breached the contract of insurance in three instances: first, "[W]hen advances were needed by contractors [Safeco]4 refused to advance funds that were provided for in the approved bid by [Safeco's] selected contractor Jeff Wolf of JWI Restoration" [Complaint, Docket No. 1-1, ¶ 12]; second, "[Safeco] forced the Plaintiffs to use their personal savings to fund the rebuilding of the home" *Id.* at ¶ 13; and,

finally, "[Safeco] forced the Plaintiffs to borrow money from friends and relatives in order to provide for themselves and their child." *Id.* at ¶ 16.

Yet, as this Court unequivocally found, the Policy explicitly provides: "[i]f the cost to repair or replace is $1,000 or more, we will pay the difference between actual cash value and replacement cost **only when** the damaged or destroyed property is repaired or replaced." [Docket No. 18-3, p. 21] (emphasis added). The Policy forbids "advancing" replacement cost value payments before the property was actually repaired or replaced.

The Court has already determined that Safeco acted in accordance with the terms of the Policy and in accordance with Kentucky law in not paying "advances" until the property was repaired or replaced. Safeco did not delay payment. It timely paid once payment became due. Safeco acted in accordance with the terms of the Policy, the facts, and Kentucky law when paying Plaintiffs' claim. Plaintiffs attempts to refashion their denial claim as a "delay" claim does not change the fact that Plaintiffs were not owed "advances" under the terms of the Policy and Kentucky law and thus were not paid them.

Moreover, the policy language at issue was approved by the Kentucky Department of Insurance and upheld by this Court, the Sixth Circuit, and virtually all courts. *See e.g. Hampton v. Safeco Ins. Co. of Am.*, 614 F. App'x 321, 324 (6th Cir. 2015) (finding an argument that Plaintiff "reasonably expected" that "replacement cost coverage would be there to use toward restoring a normal life after a devastating fire" to be "not compelling."); *Snellen v. State Farm Fire & Cas. Co.*, 675 F. Supp. 1064, 1067 (W.D. Ky. 1987); *Vakas v. Hartford Cas. Ins. Co.*, 361

F. App'x 1, 4 (10th Cir. 2010); *Kolls v. Aetna Cas. & Sur. Co.*, 503 F.2d 569, 571 (8th Cir. 1974); *Bourazak v. N. River Ins. Co.*, 379 F.2d 530, 532 (7th Cir. 1967); *Higginbotham v. Am. Family Ins. Co.*, 493 N.E.2d 373, 375 (Ill. App. 1986); *Hess v. N. Pac. Ins. Co.*, 122 Wash. 2d 180, 182, 859 P.2d 586, 587 (Wash. 1993) ("join(ing) the virtually unanimous holdings in other jurisdictions which have considered the same or similar replacement clauses" and requiring actual repair or replacement prior to payment).

If Safeco timely paid once payment became due, where is the bad faith? Plaintiffs' only response to Safeco's Motion for Summary Judgment is that a denial of payment is not necessary for a cause of action to arise; a delay will suffice. They assert that by failing to pay "advances" Safeco caused a "delay" and, ergo, acted in bad faith.

Yet, it is axiomatic that before a delay can occur, there must be an obligation to pay under the terms of the Policy. The obligation to pay only arises when the damaged or destroyed property has been repaired or replaced. The Court has already found that Safeco honored its obligation.

To claim, as Plaintiffs do, that a "delay" could occur before an insurer's obligation to pay even arises would violate Kentucky law. The Kentucky Supreme Court recently reiterated its position that in Kentucky there is a "basic and fundamental liberty to contract and create personal insurance policies." *Philadelphia Indem. Ins. Co., Inc. v. Tryon*, No. 2014-SC-000354-DG, 2016 WL 6125679, at *5 (Ky. Oct. 20, 2016). Holding that Safeco is in bad faith for failing to pay Plaintiffs prior to Plaintiffs incurring costs would rewrite the parties' Policy and violate

12

the parties' right to contract. The Policy language at issue here has been upheld by this court and many others, and Plaintiffs cite to no case law or even provide a convincing policy argument for rewriting the Policy to include "advances."

Without using the exact words, Plaintiffs urge the Court to ignore *Wittmer*. According to Plaintiffs, where a "delay" claim is being made, the elements of bad faith, as set forth in *Wittmer*, can be disregarded. In doing so, Plaintiffs cite the unpublished opinion in *Ellis v. Arrowwood Indemnity Company,* 2015 WL 2061936 (E.D. Ky. April 30, 2015).

In *Ellis*, the defendant insurer argued that there was no denial (and, therefore, no bad faith) where the insurer did not pay a claim for seven years while the amount of damages was being litigated, despite the insurer allegedly having clear liability to pay under the terms of the policy. 2015 WL 2061936, at *1-5.

*Ellis* is distinguishable from this case in three salient aspects: first, here, unlike in *Ellis*, Safeco was not required to pay "advances" under the terms of the Policy; second, there is no dispute that Safeco paid Plaintiffs exactly what Plaintiffs were owed once liability was reasonably clear; and, finally, the seven-year delay of payment in *Ellis* for amounts clearly owed could be considered, in effect, a denial of amounts owed under the terms of that policy, thus satisfying the second *Wittmer* element requiring a denial of the claim.

As for *Ellis* heralding the death of *Wittmer*, this is a reading of the opinion that stretches the bounds of credibility. In *Ellis,* Judge Thapar remarked that *Wittmer* was written in terms of "denial", as opposed to delay because those were the facts of the case. Yet, nowhere in the opinion did Judge Thapar denounce *Ellis*. to the contrary, he explicitly stated that all three

13

*Wittmer* elements are required to prevail in a bad faith claim. Thus, Plaintiff's attempt to cast *Ellis* and their case an indictment in *Wittmer* is unavailing.

While a delay may be regarded as bad faith, there is no delay in this case. The Court has already determined that Safeco acted in accordance with the terms of the Policy and in accordance with Kentucky law in not paying "advances" until the property was repaired or replaced. Safeco did not delay payment. It timely paid once payment became due. Safeco acted in accordance with the terms of the Policy, the facts, and Kentucky law when paying Plaintiffs' claim. Plaintiffs attempts to refashion their denial claim as a "delay" claim does not change the fact that Plaintiffs were not owed "advances" under the terms of the Policy and Kentucky law and thus were not paid them.

Notably, in response to Defendant's dispositive motion, Plaintiffs make no mention, much less argument, pertaining to their alleged claims under Kentucky's Unfair Claims Settlement Practices Act. As such, the claim cannot withstand summary judgment.

As this Court discussed in its earlier opinion, Plaintiffs have not identified any recoverable damages. When asked, via interrogatory, to explain their damages Plaintiffs stated that they could not answer. [Docket No. 34-2]. Safeco moved to compel full responses from Plaintiff and, on the day that Safeco filed the Motion for Summary Judgment, Plaintiffs were ordered to fully respond to discovery. [Docket No. 33]. Even after the Court allowed Plaintiffs to clarify their responses, and after Safeco had pointed out in its Motion that Plaintiffs had offered no proof of damages, Plaintiffs chose not to supplement, stating that their responses were complete. [Docket No. 35].   Instead, Plaintiffs claim they are entitled to "punitive

damages" despite their being no evidence to support a claim for punitive damages and no claim for actual damages. Plaintiffs' claim for damages is the type of pure conjecture not allowed under Kentucky law.

### IV.   CONCLUSION

Plaintiffs' claims of bad fath and violation of KRS 304-12.320, *et seq.* fail as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Safeco Insurance Company of America's Motion for Summary Judgment [Docket No. 34] be **SUSTAINED**.

This 20th day of July, 2017.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge

15